UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOAN K. SLAVENS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. CV-10-5103-JPH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 15, 17.) Attorney Thomas A. Bothwell represents plaintiff; Special Assistant United States Attorney Alexess D. Rea represents defendant. The parties have consented to proceed before a magistrate judge. (ECF No. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Joan K. Slavens (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on September 21, 2006. (Tr. 125, 127, 142, .) Plaintiff alleged an onset date of September 1, 2005. (Tr. 125.) Benefits were denied initially and on reconsideration. (Tr. 95, 100, 102.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Robert S. Chester on July 23, 2009. (Tr. 30-90.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 64-82.) Medical expert Dr. McKnight and vocational expert Debra LaPoint also testified. (Tr. 33-64, 82-88.) The ALJ denied benefits (Tr. 11-22) and the Appeals Council denied

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born on February 10, 1970 and was 39 years old at the time of the hearing. (Tr. 125.) She graduated from high school and has about two years of college education. (Tr. 154, 239.) Her last full-time position ended in 2004 and involved graphics design and layout. (Tr. 65, 69.) Plaintiff testified that she quit that job on impulse because she felt inadequate when her employer suggested she go on disability. (Tr. 65.) Since 2004, plaintiff has had a few part-time jobs of short duration. (Tr. 69.) She was laid off from her last part-time job in retail at a bookstore in March 2007. (Tr. 69, 77.) Plaintiff testified she would like to be working full-time but she is limited to part-time work due to her low energy level, side effects from medication, and physical illness. (Tr. 70.) She has bipolar disorder with bouts of deep depression and manic episodes. (Tr. 71.) She testified there have been periods where her behavior has been intensified by alcohol use, but she has experienced symptoms all of her life. (Tr. 75.) Plaintiff testified she cannot work right now because she is confused and does not know where to go and what to do to start working again. (Tr. 78.) She has a hard time being around people. (Tr. 78.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).

"[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since September 1, 2005, the alleged onset date. (Tr. 13.) At step two, the ALJ found plaintiff has the following severe impairments: bipolar disorder, alcohol abuse, and obsessive

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

-compulsive disorder traits. (Tr. 13.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 14.) The ALJ then determined:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should be limited to non-complex, superficial interaction with the public and non-collaborative interaction with co-workers.

(Tr. 16.) At step four, the ALJ found plaintiff is capable of performing past relevant work. (Tr. 21.) As a result, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from September 1, 2005 through the date of the decision. (Tr. 22.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) improperly rejected the opinions of plaintiff's treating and examining medical providers; and (2) improperly denied plaintiff's claim based on an incomplete hypothetical to the vocational expert. (ECF No. 16 at 11-21, ECF No. 21 at 1-10.) Defendant asserts the ALJ: (1) properly evaluated the medical evidence; and (2) properly relied on vocational expert testimony in making the nondisability determination. (ECF No. 20 at 5-19.)

## DISCUSSION

**1. Opinion Evidence**

Plaintiff argues the ALJ failed to properly reject the opinions of Dr. Cardell, Dr. Barnard, and therapist Peggy Peterson, LHMC. (ECF No. 16 at 11-19.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

    **a.    Dr. Cardell**

Plaintiff argues the ALJ improperly rejected Dr. Cardell's assessment of marked and moderate limitations. (ECF No. 15 at 14-15.) Dr. Cardell is a treating provider at Lourdes Counseling Center who saw plaintiff four times between October 2007 and April 2009. (Tr. 581, 583, 587, 589.) Nurse Deborah Lusch also noted consultation with Dr. Cardell regarding medication management. (Tr. 273, 483, 493, 555, 563, 566, 579, 591, 616.) On July 20, 2009, Dr. Cardell signed a "Mental Medical Source Statement" form and assessed ten marked limitations and nine moderate limitations.[1] (Tr. 634-37.) There was only one functional area with no significant limitation indicated, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 635.) The explanatory narrative states:

> Joan's longstanding mood disorder has inhibited her ability to be consistent in any work setting. Her depression continues to impair her concentration and memory, leading to difficulty in learning new tasks, adapting to changing roles or expectations, +/or exercising judgment and making decisions. Joan also continues to exhibit paranoid ideation about others and their treatment of her. This makes her social interactions in the workplace very problematic, and it leads to an inability to work consistently w/ coworkers and especially w/ supervisors.

(Tr. 636.)

The ALJ assigned little weight to Dr. Cardell's July 2009 assessment. (Tr. 20.) The ALJ stated, "The undersigned does not assign significant weight to this final assessment as it is inconsistent with Dr. Cardell's previous opinions and the overall evidence." (Tr. 20.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. Similarly, an ALJ may

---

[1]The ALJ points out Dr. Cardell's assessment appears to be in therapist Peggy Peterson's handwriting. (Tr. 20.) Comparison of the narrative portion of Dr. Cardell's assessment with five assessment forms completed by Ms. Peterson reveals a similarity in handwriting. (Tr. 384-87, 388-91, 392-95, 407-10, 568-71, 636.) Regardless, the evaluation is signed by Dr. Cardell and is therefore the opinion of a treating physician.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff asserts the ALJ did not specifically identify any inconsistencies between Dr. Cardell's opinion and the other evidence of record. (ECF No. 16 at 14-15.) However, plaintiff overlooks the ALJ's observations of inconsistencies in Dr. Cardell's own records and in the record as a whole.

First, the ALJ pointed out Dr. Cardell's opinion that plaintiff is moderately limited in her ability to ask simple questions or request assistance and markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors is not consistent with other evidence in the record. (Tr. 14-15.) Specifically, the ALJ noted that although plaintiff reported she quit working at a veterinarian's office because of an inability to get along with other staff, she also reported that she talks with friends on the telephone and attends church. These activities reasonably suggest plaintiff is not markedly limited in social functioning. (Tr. 15, 138, 402.) Plaintiff also reported leaving other jobs for reasons other than an inability to get along with staff. (Tr. 20, 402.) Furthermore, Dr. Gentile concluded plaintiff would be able to have superficial contact with others. (Tr. 20, 341.) The ALJ cited specific evidence which reasonably supports the conclusion that Dr. Cardell's assessed limitations regarding social functioning are inconsistent with other evidence.

Second, the ALJ pointed out Dr. Cardell's notes do not reflect observations or conclusions consistent with the degree of limitations assessed in July 2009. (Tr . 20.) Where a treating physician's opinion is itself inconsistent, it should be accorded less deference. *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir.1996). In November 2008, Dr. Cardell noted plaintiff had a full range of affect and did not appear depressed. (Tr. 19, 583.) Plaintiff reported doing well and her OCD symptomatology had decreased markedly with medication with no side effects. (Tr. 583.) Dr. Cardell described plaintiff's complaint of noticeable depression on a monthly basis around her menses as "mild depressive tendencies." (Tr. 583.) The ALJ also noted that in April 2009, Dr. Cardell noted plaintiff was doing acceptably well, had diminished anxiety, much diminished obsessive-compulsive symptomatology, and substantially improved mood control. (Tr. 20, 581.) Plaintiff was not totally free of mood swings, but showed no major mental status signs or symptoms. (Tr. 20, 581.) The ALJ observed the significant limitations contained in the July 2009 assessment are not reflected in Dr. Cardell's own notes and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

reported observations. (Tr. 20.) This is a reasonable interpretation of the evidence and constitutes a specific, legitimate reason supported by substantial evidence for rejecting Dr. Cardell's opinion.

Additional evidence supporting the ALJ conclusion includes the testimony of the medical expert, Dr. McKnight, who opined Dr. Cardell's 2009 assessment is not consistent with objective test results in the record and the limitations assessed are "grossly overstated." (Tr. 45.) Dr. Cardell's July 2009 opinion indicates plaintiff demonstrated paranoia, yet in June, July and August 2009 plaintiff denied paranoia to nurse Susan Wible, also at Lourdes Counseling Center. (Tr. 644, 646, 650.) As a result, the ALJ's conclusions about Dr. Cardell's 2009 assessment are supported by the record. The ALJ cited specific, legitimate reasons supported by substantial evidence for rejecting the July 2009 opinion of Dr. Cardell. There is no error.

**2.   Dr. Barnard**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Barnard, an examining psychologist. (ECF No. 16 at 15-17.) Dr. Barnard examined plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form dated April 11, 2006. (Tr. 238-42.) Dr. Barnard diagnosed bipolar disorder NOS, alcohol abuse, mathematics disorder, and personality disorder NOS. (Tr. 240.) He assessed one marked and three moderate limitations in cognitive functioning and one marked and three moderate limitations in social functioning. (Tr. 241.) Explanatory comments indicate that plaintiff's attention, concentration and memory are adversely affected by severe depression and plaintiff would have difficulty following complex directions and exercising judgment and making decisions. (Tr. 241.) Further, Dr. Barnard opined plaintiff demonstrated significant emotional disturbance, is socially withdrawn, somewhat paranoid, and has problems relating to others. (Tr. 241.) Dr. Barnard noted 60 days of sobriety might lessen depression somewhat and attention and concentration may improve slightly. (Tr. 241.) He opined plaintiff would not be capable of employment within the next 12 months. (Tr. 241.)

The ALJ assigned less weight to Dr. Barnard's opinion for several reasons. (Tr. 15, 18.) First, the ALJ rejected Dr. Barnard's assessment that plaintiff is moderately limited in her ability to understand, remember and follow simple (one-step or two-step) instructions and markedly limited in her ability to understand, remember and follow complex (more than two-step) instructions. (Tr. 15, 241.) The ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

pointed to the opinions of the medical expert and an examining psychologist as evidence inconsistent with Dr. Barnard's conclusions. (Tr. 18.) When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ cited Dr. McKnight's testimony that the WAIS-III test administered by Dr. Barnard requires the ability to perform three-step responses and plaintiff performed within acceptable limits. (Tr. 15, 36.) The ALJ also pointed to the test results on the WAIS-II administered by Dr. Orr in February 2009, who noted they are very similar to the results obtained by Dr. Barnard. (Tr. 15, 404.) Dr. Orr noted evidence of malingering and opined it is difficult to be definitive about the validity of diagnoses and level of functioning. (Tr. 406.) As a result, the ALJ concluded Dr. Barnard's assessment of limitations in concentration are inconsistent with other evidence in the record and his own objective test results. (Tr. 15.) Furthermore, the ALJ pointed out that Dr. Orr noted plaintiff reported playing the piano for 15 to 20 minutes at a time and can read informational material for 30 minutes, activities suggesting milder limitations on concentration than those assessed by Dr. Barnard. (Tr. 15, 403.) The ALJ cited substantial evidence supporting the reasons given for rejecting Dr. Barnard's assessment and determining plaintiff is mildly limited in concentration, persistence and pace.[2]

The ALJ also gave less weight to Dr. Barnard's opinion regarding work capability because of evidence of malingering. (Tr. 18.) The ALJ pointed out that like Dr. Barnard, Dr. Orr administered the WAIS-III and obtained similar results. (Tr. 18, 404.) However, Dr. Orr also administered the MMPI-II which resulted in an invalid profile. (Tr. 404.) Dr. Orr stated, "This indicates that she was less than open and forthcoming in the way she answered the test." (Tr. 404.) Because of the elevated validity scales, the test results could not be interpreted. (Tr. 404.) Dr. Orr also administered the M-FAST and the results were "highly suggestive of malingered psychopathology." (Tr. 405.) Dr. Orr indicated "self-report is inconsistent with her observed behavior; she is endorsing very extreme and uncommon symptoms; is

---

[2] As noted by the ALJ, the vocational expert testified that even with a moderate limitation in concentration, persistence and pace, jobs are available in the national economy that plaintiff could perform. (Tr. 15, 21, 85-87.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

endorsing symptom combinations that are both unlikely and inconsistent with common mood and psychotic disorders; and has a tendency to endorse severe and unusual psychotic symptoms." (Tr. 405.) Dr. Orr opined the results of the M-FAST and MMPI-II made it difficult to be definitive regarding diagnoses and level of functioning, (Tr. 406.)  The ALJ pointed out that Dr. Barnard did not test for the possibility of malingering. (Tr. 18.)

Plaintiff observes that Dr. Orr's test results were administered three years after Dr. Barnard's test results and argues that evidence of exaggeration of symptoms is "not particularly surprising" since plaintiff's disability claim had been denied twice at the time of Dr. Orr's testing. (ECF No. 16 at 16, ECF No. 21 at 3.) Plaintiff further argues "most desperate individuals (e.g., those with disabling impairments) are often the most likely to engage in some symptom magnification." (ECF No. 16 at 15.) Plaintiff's assumptions seem to lead to the unsupportable conclusion that claimants who have been determined to be not disabled but later test positive for malingering are only malingering out of frustration. Even if it is true that malingering could be explained by frustration at having been determined "not disabled"in some cases, there is no evidence supporting such a conclusion in this case. Plaintiff suggestion that Dr. Barnard's opinion is a more reliable indicator of plaintiff's actual limitations because it was formulated before plaintiff's disability claim had been rejected is speculative and has no foundation in the record. Objective testing at two points in time yielded similar results. Evidence of exaggeration or malingering was identified during the second set of testing. It is therefore reasonable to infer, as the ALJ did, that the first test results may also have been influenced by exaggeration or malingering.[3]

Notwithstanding the evidence of exaggeration, the ALJ also pointed out that plaintiff's reported symptoms during Dr. Barnard's evaluation lack credibility. (Tr. 18.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. Plaintiff told Dr. Barnard she did not feel emotionally stable, but eight days after Dr. Barnard's evaluation, plaintiff reported improved mood and motivation and decreased irritability. (Tr. 18, 238, 292.) The next month, plaintiff felt she had

---

[3]It is the ALJ's duty is to resolve evidentiary conflicts. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

improved a great deal due to therapy, her affect was bright, symptoms of OCD were minimal and she had a decrease in irritability and agitation. (Tr. 18, 289.) She told Dr. Barnard she has had mood swings since she was a child, but the ALJ noted she has been able to work for many years. (Tr. 20, 238.) Although this may not be the only interpretation of the evidence, it is a reasonable interpretation of the evidence and the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ also cited Dr. Barnard's statement that 60 days of sobriety might lessen plaintiff's depression and improve attention and concentration in rejecting the limitations assessed by Dr. Barnard. (Tr. 18.) Plaintiff correctly points out that the effect of alcohol use is not appropriately considered in rejecting Dr. Barnard's opinion. (ECF NO. 16 at 17.) The ALJ must conduct the five-step inquiry without attempting to determine the impact of substance addiction. 20 C.F.R. §§ 404.1535(a), 416.935(a). Only when the ALJ finds the claimant disabled and there is evidence of substance addiction should the ALJ proceed with the sequential evaluation process to determine if the claimant would still be disabled absent the substance addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The ALJ concluded the limitations assessed by Dr. Barnard were "tainted" by plaintiff's alcohol use and that alcohol use contributed to her mental symptoms without first finding plaintiff disabled. (Tr. 22.) Thus, the ALJ improperly considered the effects of alcohol use before determination of disability was made without regard to alcohol use.

However, because the ALJ cited other specific, legitimate reasons supported by substantial evidence for rejecting Dr. Barnard's opinion, the court concludes the ALJ's consideration of the effects of alcohol on Dr. Barnard's opinion is harmless error. *See e.g., Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The outcome is the same despite the improper reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

**3.    Peggy Peterson, MA**

Plaintiff argues the ALJ erred by rejecting the opinion of treating therapist Peggy Peterson. (ECF No. 16 at 17-17-19.) Ms. Peterson saw plaintiff for therapy nearly monthly from February 2006

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

throughout the record. She completed five DSHS Psychological/Psychiatric Evaluation forms dated April 6, 2006 (Tr. 392-95), July 26, 2006 (Tr. 388-91), June 6, 2007 (Tr. 384-87), May 14, 2008 (Tr. 407-10), and April 1, 2009. (Tr. 568-71.) The evaluations include the diagnoses of bipolar disorder and obsessive compulsive disorder, and the April and July 2006 evaluations also include the diagnosis of alcohol dependence or abuse. (Tr. 389, 393, 408, 569.) The assessed limitations vary somewhat across the evaluations, from three moderate, two marked and one severe limitation in April 2006 to two moderate, one marked and one severe limitation in April 2009. (Tr. 386, 390, 394, 409, 570.)

As a therapist, Ms. Peterson is an "other source" under the regulations. "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

Plaintiff argues that because Ms. Peterson worked under the direction of Dr. Cardell, her opinion is entitled to the same weight as the opinion of a treating physician as part of an "interdisciplinary team" under *Gomez v. Chater*. (ECF No. 17 at 27-28, *citing* 74 F.3d 967, 971 (9th Cir. 1996)). Plaintiff's argument is erroneous. The Social Security Regulation relied upon in *Gomez*, 20 C.F.R. § 416.913(a)(6), has been amended and no longer includes "interdisciplinary team" under the definition of "acceptable medical sources." See 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-5). *Gomez* therefore does not apply. Even if the "interdisciplinary team" approach noted in *Gomez* could apply, it does not apply in this case. There is no evidence of a working relationship between Ms. Peterson and Dr. Cardell comparable to the the working relationship of an interdisciplinary team described in *Gomez*.

Notwithstanding, S.S.R. 06-3p advises adjudicators that opinions of "other medical sources" may be given more weight than a treating physician if certain factors are present. As stated in the Ruling,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

"Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* For example, it may be appropriate to give more weight to an other source than an acceptable medical source if the other source has seen the claimant more often and has provided better supporting evidence and a better explanation for his or her opinion. *Id.*

The ALJ gave Ms. Peterson's opinion less weight because "it is considered non-accepted under the Social Security Act" and because it is generally inconsistent with the other objective medical evidence. (Tr. 20.) Plaintiff suggests the ALJ's use of the term "non-accepted" means the ALJ did not accept the evidence from Ms. Peterson and dismissed it out of hand. (ECF No. 16 at 18.) However, the regulations refer to medical opinions of psychologists and physicians as "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). "Other sources" therefore include those sources which are *not* "acceptable medical sources" under the regulations. 20 C.F.R. §§ 404.1513(d), 416.913(d) Although the phrase "non-accepted" may perhaps be inartful and the terms "not an acceptable medical source" or "other source" would be more accurate, it is apparent that the ALJ considered the evidence from Ms. Peterson. Furthermore, the regulations and case law agree that an acceptable medical source is generally given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Thus, the ALJ may properly assign less weight to an other source or "non-acceptable medical source" opinion.

The issue is whether the ALJ cited germane reasons supported by substantial evidence for giving less weight to Ms. Peterson's opinion. Plaintiff asserts the ALJ's statement that Ms. Peterson's opinions are inconsistent with the evidence is legally insufficient because it is vague and non-specific. (ECF No. 16 at 19.) An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ pointed out that on June 6, 2007, Ms. Peterson assessed a marked limitation in two areas and a severe limitation in the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. 386.) The next day, plaintiff had a bright affect, reported her mood had been "pretty good" and she was eating and sleeping well. (Tr. 499.) She denied significant periods of euphoria, agitation or depression. (Tr. 499.) She was looking for part-time work. (Tr. 499.) The ALJ assigned less weight

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

to Ms. Peterson's opinion because it is inconsistent with contemporaneous medical evidence. (Tr. 19.) This is a germane reason and the evidence reasonably supports the inferences drawn by the ALJ.

The ALJ also pointed out that despite many records of reported improvement in plaintiff's symptoms, Ms. Peterson's April 2009 evaluation indicates plaintiff is unable to tolerate the pressure of a work setting. (Tr. 19, 570.) In October 2008, plaintiff took a vacation and reported she was able to relax and enjoy herself learning to ride horses. (Tr. 19, 548.) Her depressive symptoms were improved with medication and her compulsion to clean was minimal. (Tr. 548-49.)  In November 2008, she reported a significant improvement in mood due to weight loss. (Tr. 596.) Dr. Cardell noted plaintiff did not appear depressed and was doing well. (Tr. 583.) In January 2009, plaintiff appeared a bit more anxious but her obsessive thoughts were in pretty good control. (Tr. 593.) Her obsessive-compulsive symptoms were markedly decreased. (Tr. 583.) In February 2009, Dr. Orr's test results were highly suggestive of malingering. (Tr. 405.) Plaintiff reported more mood instability and depressive symptoms in February 2009, but denied feeling irritable or agitated and denied euphoria. (Tr. 591.) Evidence from the period leading up to the April 2009 evaluation could reasonably be interpreted to reflect improvement of symptoms inconsistent with the degree of limitation assessed by Ms. Peterson.  Further, two weeks after the April 2009 evaluation, Dr. Cardell indicated plaintiff was doing acceptably well with diminished anxiety and obsessive-compulsive symptoms and substantially improved mood control. (Tr. 20, 581.) Dr. Cardell observed no major mental status signs or symptoms. (Tr. 581.) This also is reasonably interpreted as inconsistent with the marked and severe limitations assessed by Ms. Peterson.

The ALJ adequately supported the conclusion that Ms. Peterson's opinion is generally inconsistent with other objective medical evidence. The reason is germane to the witness and is supported by substantial evidence. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision when it is not based on legal error and is supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

**2.    RFC and Hypothetical to the Vocational Expert**

Plaintiff argues the ALJ erred at step four because the vocational expert's opinion that plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

can return to past relevant work was based on an incomplete hypothetical. (ECF No. 16 at 20.) The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallenes*, 881 F.2d at *id.*

      Plaintiff's argument is based on the assumption that the ALJ erred in considering the medical opinion evidence. The ALJ's reasons for rejecting the opinions of Dr. Cardell, Dr. Barnard and Ms. Peterson were legally sufficient and supported by substantial evidence, discussed *supra*. The ALJ therefore properly excluded limitations assessed by those providers from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005). Therefore, the ALJ did not err.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 15)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED January 17, 2012

<u>         S/ JAMES P. HUTTON         </u>
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16